IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| JOANNE MARIE DAINTON,<br><br>                  Plaintiff,<br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                  Defendant. | No. 9:21-CV-00117-MAC |

### **REPORT AND RECOMMENDATION**

The Plaintiff, Joanne Marie Dainton, requests judicial review of a final decision of the Commissioner of Social Security Administration with respect to her application for disability-based benefits. This action is before the undersigned United States Magistrate Judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law.[1] The undersigned considered the evidence and applicable law and recommends remand.

### **I. JUDICIAL REVIEW**

United States district courts may review decisions of the Commissioner of the Social Security Administration. 42 U.S.C. § 405 (2015). The scope of judicial review is limited, however, to determining whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). When the Commissioner applies proper law and his decision is supported by substantial evidence, the Commissioner's

---

[1] General Order 05-06 refers civil proceedings involving appeals from decisions of the Commissioner of Social Security Administration to magistrate judges serving the divisions where the cases are filed. *See also* 28 U.S.C. ' 636(b)(1)(B)(2010) and Loc. R. CV-72 for the Assignment of Duties to United States Magistrate Judges.

findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also* 42 U.S.C. § 405(g).

Reviewing courts, therefore, give the Commissioner's decisions great deference. *Leggett*, 67 F.3d at 564. Courts may not re-weigh evidence, try issues *de novo*, or substitute their judgments for those of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A court cannot reverse the Commissioner simply because the court might have decided the case differently in the first instance. *Elfer v. Texas Workforce Commission*, 169 F. App'x 378, 380 (5th Cir. 2006); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (stating that the court may not "substitute [its] judgment for that of the Secretary"). Rather, it is for the Commissioner to weigh evidence and resolve conflicts. *See Anthony*, 954 F.2d at 295; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

When the Commissioner fails to apply correct principles of law, or when "substantial evidence" does not support the Commissioner's decision, the governing statute authorizes a reviewing court to enter, upon the pleadings and the transcript of the record, a judgment modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.[2] *See* 42 U.S.C. 405(g). Thus, courts have power to remand for further administrative proceedings, or they may direct the Commissioner to award benefits without a rehearing. Ordinarily, courts remand for further administrative proceedings to address and cure deficiencies. *See, e.g., Newton v. Apfel*, 209 F.3d 448, 460 (5th Cir. 2000).

---

[2] "Substantial evidence" is a term of art meaning more than a scintilla but less than a preponderance. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). Evidence is "substantial" when relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Marcello v. Bowen*, 803 F.2d 851, 853 (5th Cir. 1986) (citing *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983)).

## II. BACKGROUND

    A.    Procedural History

Dainton filed an application for a period of disability and disability insurance benefits on July 19, 2019 (Tr. 83–84, 96, 98, 242–243), asserting that she has been disabled since August 12, 2016. Her claim was denied by Administrative Law Judge ("ALJ") Gerald Meyer in a decision dated October 16, 2020. (Tr. 110–127.) Dainton appealed and the Appeals Council found that the ALJ failed to consider the medical opinion of her treating physician, vacated the decision of the ALJ, and remanded this matter for further proceedings. (Tr. 128–132.) A supplemental hearing was held before ALJ Meyer on March 8, 2021. (Tr. 31–56.) ALJ Meyer issued a second unfavorable decision on April 6, 2021 (Tr. 9–28), which became the final decision of the Acting Commissioner when the Appeals Council denied Dainton's request for review. (Tr. 1–6.) Dainton filed the instant action pursuant to 42 U.S.C. § 405(g), appealing the Commissioner's final decision.

    B.    Personal Background

Dainton was born on March 18, 1973. (Tr. 242.) She has a twelfth grade education and two years of technical training. (Tr. 34.) The vocational witness (VE) testified that the Dainton was previously employed as a payroll accountant and bookkeeper—both at the sedentary exertional level. (Tr. 34–35.) Dainton testified that she is unable to work because of fibromyalgia, seizures, migraine headaches, depression, and anxiety. (Tr. 62.) ALJ Meyer summarized her testimony:

> The claimant testified she had seizures and had difficulty performing her payroll job due to lack of focus and memory problems. The claimant indicated she had migraine headaches several times a week that lasted a few hours each. She reported fibromyalgia pain and takes Tylenol III to relieve the pain. The claimant testified she was limited in her ability to sit, stand and walk for an extended period due to pain. She indicated she does not lift or carry anything.

(Tr. 18.) She further testified that her daily activities are limited because she does not cook, exercise, perform housework, wash laundry, or do grocery shopping. (Tr. 79.) Dainton treats with a chiropractor for lower back pain and an MRI revealed bulging discs in her spine. (Tr. 66-67.) She previously treated with a rheumatologist for fibromyalgia, and Dainton testified she prescribed medications that caused side effects, including "memory fog" and "brain fog," making it very hard to think and remember. (Tr. 63.) Her primary care physician, Dr. Michelle Bullard, currently treats her fibromyalgia and has continued her prescriptions. (Tr. 64.)

C. The Administrative Decision

ALJ Meyer utilized the five-step sequential analysis model specified by regulations and approved by courts in reaching his decision denying Dainton's application.[4] He found that Dainton did not engage in work activity that met the definition of substantial gainful activity from August 12, 2016, the alleged disability onset date, through the date of the decision. (Tr. 15.) He found at step two that Dainton had the severe impairment severe impairments of obesity,

---

[4] The five steps—with explanatory parenthetical commentary—generally are as follows:

1. The Commissioner ascertains *whether an applicant currently engages in substantial gainful activity*. (If so, a finding of non-disability is entered, and the inquiry ends.)

2. The Commissioner determines *whether an applicant has a severe impairment or combination of impairments.* (If not, the inquiry ends and a finding of non-disability is entered.)

3. The Commissioner determines *whether any severe impairment(s) equals or exceeds those in a Listing of Impairments, 20 C.F.R. Subpt. P, Appendix 1* ("the Listings"). (If so, disability is presumed and benefits are awarded. If not, the analysis continues.)

4. The Commissioner determines *whether any impairment(s) prevents the claimant from engaging in regular previous employment*. (If so, a *prima facie* case of disability is established and the burden of going forward (to the fifth step) shifts to the Commissioner. *See Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987)).

5. The Commissioner determines *whether other work exists in the national economy which the applicant can perform*. (If so, the burden shifts back to the applicant to show he cannot perform the alternative labor. *See id.*; *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986); 20 C.F.R. § 404.1520(a)-(f) (2017)).

fibromyalgia, seizures, disorders of the spine, depression and anxiety. (Tr. 15.) ALJ Meyer recognized her alleged impairment of migraines but found that this impairment was not severe because it would "have such a minimal effect on the individual that (it) would not be expected to interfere with the individual's ability to work . . ." (Tr. 13, 15.) At step three, ALJ Meyer considered whether Dainton had an impairment or combination of impairments that met or medically equaled a listed impairment (specifically Listings 1.04 (disorders of the spine), 11.02 (seizure disorders), 12.04 (mental impairments), and 12.06 (anxiety disorder)). (Tr. 16.) He also considered her fibromyalgia and obesity according to Social Security Ruling ("SSR") 12-2p and 19-2p, respectively, and concluded that her impairments did not satisfy any of the listed impairments. (*Id.*)

Ultimately, ALJ Meyer concluded that Dainton has the residual functional capacity ("RFC") to perform light work, except that she is:

> limited to occasional stooping crouching and kneeling, but not crawling. The claimant cannot climb ropes, ladders or scaffolding. The claimant cannot work at unprotected heights, dangerous machinery or drive. The claimant can understand, remember and carryout simple instructions with just 1-3 step tasks that are routine and repetitive without frequent changes in duties. The claimant is limited to occasional contact with the public.

(Tr. 17-18.) At step four, ALJ Meyer found Dainton capable of performing her past relevant work as bookkeeper and payroll accountant. (Tr. 21.) Alternatively, ALJ Meyer identified other jobs available in the national economy that Dainton can perform, such as office helper, office cleaner, and retail marker. (Tr. 22.) Thus, the ALJ found that Dainton was not disabled at any time during the relevant period. (*Id.*)

## **III. DISCUSSION**

Danton raises three points of error on appeal. First, that ALJ Meyer erred in not including headaches or migraines among severe impairments at step two. Second, that ALJ Meyer erred in rejected her treating physician medical opinion evidence, which resulted in an RFC that is not supported by the evidence. Last, she questions whether the step four decision that she can return to her past relevant work as a bookkeeper and payroll accountant is supported by the evidence in light of VE testimony that an individual with her RFC cannot perform the past relevant work. Because the undersigned finds that remand is warranted on the first point of error, the remaining issues are not addressed in this report.

In response to the first point of error, the Commissioner claims that the ALJ's omission of any analysis pursuant to SSR 19-4p was harmless because "the ALJ's consideration of Plaintiff's migraine headaches as a medically determinable impairment at step two was *consistent with* the processes described in SSR 19-4p," which "contradicts [her] claim that the ALJ did not determine whether a primary headache disorder was present." (Doc. No. 18, p. 7) (emphasis added). The Commissioner argues that Dainton failed to satisfy her burden of showing that the ALJ's alleged error was harmful. (Doc. No. 18, p. 7) ("[Dainton] cannot show that [the ALJ's] omission of an SSR 19-4p analysis resulted in harm to her substantial rights"). The Commissioner contends that Dainton has not "identified evidence that would support a finding that [her migraines] were either severe or listing-level during the relevant period." (*Id.*) The Commissioner's position is correct—even if the ALJ erred in not including headaches at step two, it is not reversible error if the limitations caused by the headaches were ultimately considered in formulating her RFC.

Social security appeals are typically very complex and involve in-depth analysis of the applicable legal framework of federal regulations, social security rulings, and case law. In this case, however, the issue on appeal is relatively simple: did ALJ Meyer's failure to include migraine headaches among her severe impairments at step two result in an RFC that is not supported by substantial evidence? The answer is yes.

A. <u>Migraines as an Impairment at Step Two</u>

At step two, the ALJ determines whether an applicant has a severe impairment or combination of impairments. If a medically determinable impairment or combination of impairments is found to exist, the regulations provide that it is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522 (2017). The Fifth Circuit has held, however, that a literal interpretation of the severity regulation would be inconsistent with the Act because it would sometimes lead to the denial of benefits to claimants unable to perform substantial gainful activity. *See Stone v. Heckler*, 752 F.2d 1099, 1101-03 (5th Cir. 1985); SSR 85-28, 1985 WL 56856 (1985). Accordingly, an ALJ may properly conclude that an impairment is not severe only after expressly finding that it "is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Salmond v. Berryhill*, No. 17-10161, 2018 WL 3015052, at *3 (5th Cir. June 18, 2018) (citing *Stone*, 752 F.2d at 1101-03. Re-stated, an impairment is severe if it is anything more than a "slight abnormality" that "would not be expected to interfere" with a claimant's ability to work. *Id.*

Further, the Act specifically requires that disabling impairments be demonstrated by "medically acceptable clinical and laboratory diagnostic techniques" showing that work-related

functional limitations are present and bars an award of benefits based on conditions that cannot be documented. *See* 42 U.S.C. §§ 423(d)(1)(A), 423(d)(3); *see also* 20 C.F.R. §§ 404.1513(a), 416.913(a) (evidence from an acceptable medical source is required to establish a medically determinable impairment). Therefore, in the absence of clinical findings that demonstrate an alleged impairment is present, the agency does not possess the discretion to base a finding of disability on the claimant's reported symptoms. However, the undersigned notes that the ALJ must consider subjective evidence of pain, but it is within the ALJ's discretion to determine the pain's disabling nature. *Wren v. Sullivan*, 925 F.2d at 128 (citing *Jones v. Heckler*, 702 F.2d 616, 621–22 (5th Cir. 1983) (internal citations omitted)). Such determinations are entitled to considerable deference. *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986). Finally, the burden of establishing the presence of disabling functional impairments is upon the claimant. *See Wren* at 128; *see also Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004) (burden of establishing the presence of a medically determinable impairment with acceptable medical evidence is on the claimant).

      B.    <u>Migraine Headaches as a Listings-Level Impairment at Step Three</u>

"Migraine headache disorder" is not a *per se* Listed Impairment, but Social Security Ruling 19-4p points to Listing 11.02 (epilepsy) as "the most closely analogous listed impairment" for migraine headaches. *Soc. Sec. Ruling 19-4p; Titles II & XVI: Evaluating Cases Involving Primary Headache Disorders* (S.S.A. Aug. 26, 2019) ("SSR 19-4p"). SSR 19-4p was promulgated to assist adjudicators in evaluating headache disorders and provides guidance in considering the effects of headaches when determining residual functional capacity.[2] (*Id.*) The

---

2    Although social security rulings do not have the same force and effect as statutes or regulations, they are binding on all of our components in accordance with 20 CFR 402.35(b)(1) and are binding as precedents in adjudicating cases. (*Id.*)

ruling defines headache disorders as a collection of chronic headache illnesses characterized by repeated exacerbations of overactivity or dysfunction of pain-sensitive structures in the head. (*Id.*) Examples of common primary headaches include migraines and tension-type headaches and are typically severe enough to require prescribed medication and sometimes warrant emergency department visits. (*Id.*) The ruling instructs adjudicators to determine whether a headache disorder constitutes a medically determinable impairment by considering objective medical evidence and subjective allegations, including whether the record contains a primary headache disorder diagnosis from an acceptable medical source. (*Id*. at *6).

ALJ Meyer considered Listing 11.02 and concluded:

> Listing 11.02 is not satisfied because the record does not document a detailed description of a typical seizure pattern, including all associated phenomena, occurring more frequently than once a month, in spite of at least three months of prescribed treatment with daytime episodes featuring a loss of consciousness and convulsive seizures or nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

(Tr. 15.) However, SSR 19-4p requires *additional* steps for the ALJ in evaluating headache disorders pursuant to Listing 11.02:

> To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of the headache events; adherence to prescribed treatment; side effects of treatment (for example . . . drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

*Id.* ALJ Meyer did not refer to SSR 19-4p nor apply its relevant criteria. Dainton claims this omission resulted in reversible legal error that requires remand.

9

C.      Evidence of Migraine Headaches

In 2016, Dainton was referred to a neurologist, Lorenzo Lorente, M.D., by her treating doctor, Michelle Bullard, M.D. (Tr. 553-554). Dr. Lorente's letter to Dr. Bullard summarized his findings:

> [Dainton] has suffered with headaches for about two years. She averages about one headache three to four times a week, more frequently located in the occipital region and sometimes accompanied by dizziness and nausea.
>
> For many years, ever since she was a teenager, she has had some episodes usually occurring in the evening and usually when she is tried and most likely every day, in which she gets a generalized jerk involving mainly the arms. She has never had any convulsions or episodes of loss of consciousness.
>
> On August 10th, she went to Conroe Regional Hospital with headaches and chest pain. She was hospitalized for two or three days and they did multiple tests, including a CAT scan and MRIs of the brain, which were normal, and they also did an electroencephalogram, which apparently showed some abnormalities and they put her on Keppra.
> . . .
> Her past medical history is complicated. This patient complains of diffuse aches throughout her entire body. She has difficulty sleeping.
> . . .
> My impression is that [Dainton] has myoclonic seizures. She also has chronic tension headaches. She also has diffuse arthralgias, for which she is scheduled to see a rheumatologist.

(Tr. 553–554). After the examination, Dr. Lorente prescribed Depakote with a note that Dainton was to follow-up to determine whether her tension headaches required prophylactic medication. (Tr. 554.)[3] The medical record also contains a 2020 medical source statement from Dr. Bullard indicating that she diagnosed Dainton with, *inter alia*, migraine headaches and that her medication causes "brain fog," memory loss, and slowed neurological responses. (Tr. 557.)

---

3    It appears that Dr. Lorente's letter was included in the medical record as a component of the records from Dr. Bullard's office. There are no other treatment records from Dr. Lorente, and it is unknown whether Dainton returned for the follow-up.

Dainton testified that when she stopped working, she was having migraines two to three times per week or more. (Tr. 37.) Her migraine episodes usually lasted three to four hours, caused her to be very sensitive to noise and required her to lie down in a quiet, dark place. (Tr. 37–38). She also testified that her migraines occurred at least once or twice a week and last a few hours on average. (Tr. 40). She is on medication for both seizures and migraines prescribed by Dr. Bullard, whom she has been seeing three times per year for treatment since 2008. (Tr. 41). Dainton's counsel asked the VE how her alleged migraines would affect her ability to maintain employment, and the VE testified that if an individual experiences migraine episodes once or twice a week where the individual has to lie down in a dark room for at least an hour at a time—she would not be able to sustain employment. (Tr. 54.)

D. Did ALJ Meyer Commit Legal Error?

Despite the evidence discussed in Section C., *supra*, ALJ Meyer did not include migraine headaches among Dainton's severe impairments at step two. He explained that her migraines "represent medically determinable impairments in this matter but are not severe because they are only slight abnormalities which have such a minimal effect on the individual that they would not be expected to interfere with the individual's ability to work irrespective of age, education, or work experience." (Tr. 15.) The undersigned disagrees. The objective medical evidence coupled with Dainton's subjective allegations demonstrate that her migraine headaches cause, at the very least, a minimal effect on her ability to work. *See* (Tr. 553-553) (consulting neurologist diagnosed "chronic tension headaches" and noted that headaches previously required emergency care); (Tr. 557-558) (Dr. Bullard's 2020 medical source statement that noted migraine headaches); (Tr. 394) (August 2016 hospital note documented Dainton's diagnosis of unspecified migraine disorder); (Tr. 472, 477) (2017 rheumatology treatment records documented Dainton's

11

consistent allegations of "headaches"); (Tr. 513) (chiropractor treatment note that Dainton presented with "major" headache on September 14, 2020); (Tr. 566) (emergency room record from October 2020 that Dainton presented with "bad headache"); (Tr. 640) (emergency room record from November 26, 2018, that Dainton presented with "throbbing head").

Step Two requires only a *de minimis* showing by a claimant. *Jeansonne v. Saul*, 855 F. App'x 193, 196 (5th Cir. 2021). Dainton presented sufficient evidence to satisfy this burden. Therefore, ALJ Meyer erred in excluding migraine headaches at step two, which resulted in another error at step three when he did not apply the SSR 19-4p criteria.

E. <u>Was the ALJ's legal error harmless?</u>

An ALJ's mistake at step two is not subject to automatic reversal if the error was harmless. *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err. *Id.*; *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (per curiam). The Commissioner argues that any step two error is harmless because the ALJ adhered to the SSR 19-4p analysis and Dainton has not "cited any medical reports documenting headache activity during the relevant period in support of her claim."[4] However, the error is only harmless if the resulting limitations were ultimately included in the RFC assessment. *See Reliford v. Colvin*, No. H121850, 2013 WL 1787650, at *13 (S.D. Tex. April 25, 2013) ("even if the ALJ's failure to make a specific severity finding with regard to foot pain was an error, it was harmless because he considered related limitations at subsequent steps of the disability analysis"); *Garcia v. Astrue*, No. M.08264, 2012 WL 13716, at *13 (S.D. Tex. Jan. 3, 2012) (even if the ALJ erred at step two in failing to address the severity of the claimant's right leg venous thrombosis, that error

---

4   The Commissioner's claim in this regard is blatantly incorrect. In her brief, Dainton cites to Drs. Lorente's and Bullard's medical records, which document chronic headaches.

12

was harmless because the ALJ considered all the claimant's limitations in determining his RFC, and decided the case at step five). In short, the Commissioner argues that any error at Step 2 is harmless since the ALJ proceeded to steps four and five of the sequential disability analysis, and the RFC fully accounted for the limitations caused by her migraine headaches. The Commissioner is wrong.

If ALJ Meyer had included Dainton's migraine disorder as a severe impairment at step two, he would have been compelled to address it at step three in considering whether the Listings were satisfied. The step three analysis should have followed the guidance of SSR 19-4p, which required the ALJ to consider certain evidentiary factors related to headache disorders. Because ALJ Meyer failed to expressly address SSR 19-4p and to explain why Dainton's migraine headaches are not medically equal to Listing 11.02B, the RFC is not supported by substantial evidence. Furthermore, the vocational expert testified that a hypothetical individual with Dainton's alleged migraine symptoms ("because of migraine episodes would be absent for at least six hours one day per week") would be unable to maintain work. (Tr. 81.) Accordingly, it was imperative for ALJ Meyer to develop the record and define what limitations, if any, derive from Dainton's migraine headache disorder and his failure to do so was *not* harmless.

In light of the foregoing, the undersigned finds that remand is appropriate. *See, Johnson v. Comm'r of Soc. Sec.*, No. 3:21-05082-CV-RK, 2023 WL 181090, at *3 (W.D. Mo. Jan. 13, 2023) (remanding case where ALJ did not address SSR 19-4p despite evidence that claimant suffered from consistent, weekly migraines for which she was prescribed various treatment plans); *see also Hesseltine v. Colvin*, 800 F.3d 461, 466 (8th Cir. 2015) (remanding case to ALJ where ALJ did not expressly determine medical equivalence or explain why the claimant failed to satisfy the applicable medical equivalence standard where the evidence suggested claimant did

satisfy the medical equivalence standard); *cf. Dise v. Colvin*, 630 F. App'x 322, 324 (5th Cir. 2015) (affirming where ALJ's opinion clearly reflected that the ALJ considered all the claimed mental impairments despite not listing depression at step two).

## IV.  CONCLUSION AND RECOMMENDATION

The undersigned finds that ALJ Meyer erred in not accounting for limitations caused by Dainton's chronic migraine headache disorder at step two, which led to error at step three in not following the guidance of SSR 19-4p.  His omission resulted in an RFC that is not supported by substantial evidence.  Further, Dainton demonstrated prejudice with the VE's testimony that her alleged headache symptoms would interfere with her ability to maintain employment.  Therefore, the Commissioner's decision should be reversed and remanded.  Furthermore, although not specifically addressed in this report, ALJ Meyer is encouraged to reconsider Dainton's second point of error that challenges consideration of the treating medical opinion evidence.

## V.  OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation.  Objections to this report must:  (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report.  See 28 U.S.C. § 636(b)(1)(c) (2009); FED. R. CIV. P. 72(b)(2).  A party who objects to this report is entitled to a de novo determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1) (2009); FED. R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy

of this report, bars that party from: (1) entitlement to de novo review by the United States District Judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, at 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 9th day of March, 2023.

                                                                                                       Zack Hawthorn
                                                                                                        United States Magistrate Judge